UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**DONALD E. JACOBSON**,  Case No. 6:14-CV-00078-KI

        Plaintiff,  OPINION AND ORDER

   v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

   Lisa R.J. Porter
   KP Law PC
   5200 SW Meadows Rd., Suite 150
   Lake Oswego, OR 97035

      Attorney for Plaintiff

   S. Amanda Marshall
   United States Attorney
   District of Oregon
   Ronald K. Silver
   Assistant United States Attorney
   1000 SW Third Ave., Suite 600

Page 1 - OPINION AND ORDER

Portland, OR 97201-2902

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

  Attorneys for Defendant

KING, Judge:

  Plaintiff Donald Jacobson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

  The procedural background is complex. Suffice it to say, Jacobson filed applications for DIB and SSI on September 28, 2005, alleging disability beginning January 1, 2000. Eventually, after several appeals to the U.S. District Court for the District of Oregon, the Administrative Law Judge ("ALJ") issued a decision finding Jacobson disabled within the meaning of the Act as of April 1, 2011, and awarding him SSI. The ALJ found Jacobson not disabled prior to that date and, therefore, not entitled to DIB since, for purposes of DIB, Jacobson's date last insured was June 1, 2009.

## DISABILITY ANALYSIS

  The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

Page 2 - OPINION AND ORDER

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's

Page 4 - OPINION AND ORDER

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

For purposes of this opinion, I focus only on Jacobson's application for DIB.  The ALJ found Jacobson had the following impairments, beginning on January 1, 2000:  degenerative disc disease of the cervical and lumbar spine, diabetes mellitus, sleep apnea, and obesity.  The ALJ found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Given these impairments, the ALJ found Jacobson had the residual functional capacity ("RFC") prior to April 1, 2011 to perform less than a full range of sedentary work.  He could lift, push and pull 10 pounds occasionally, and less than 10 pounds frequently.  He could stand and/or walk two hours in an eight-hour workday, but he needed to change positions from sitting to standing every 30 minutes.  He could occasionally crawl, crouch and stoop, but could not climb ladders, ropes, or scaffolds.  He could occasionally reach overhead with his right upper extremity, but could not reach overhead with his left upper extremity.  He needed to avoid common workplace hazards. He could work in noise levels generally found in an office setting.  All work needed to be performed at desk or bench level.

Given this RFC, the ALJ found prior to April 1, 2011 Jacobson could perform his past relevant work as a licensed tax consultant.

**FACTS**

Jacobson was 49 years old on his alleged onset date of disability. He served in the United States Marine Corps for several years,¹ then earned bachelor's degrees in management and marketing and an associates degree in pre-law. He worked in a broad range of work, including managing a restaurant and auto lube store, working for police departments and city government, and doing sports officiating. He then worked from 1992 until 2001 as a tax preparation specialist, preparing tax returns and answering taxpayer questions from January to April each year. He became self-employed as a tax preparation specialist beginning in 2002, still working only a few months out of the year but fewer hours in a day.

As relevant to his DIB claim, Jacobson sought conservative treatment for pain in his lumbar spine, receiving steroid injections and physical therapy, until 2005. In February 2005, he was referred to a neurosurgeon who examined Jacobson and noted Jacobson's normal gait and station, no masses or effusions by palpation, normal range of motion of all extremities without pain, stable joints, but a positive straight leg raising sign on the right. Jacobson's MRI was normal except for degenerative disc disease at L4-5 and herniation on the right side. Surgery was delayed until Jacobson returned from Hawaii in March. Glenn Keiper, M.D., performed a three-level lumbar discogram² in early April 2005 which indicated Jacobson's pain came frm L4-5. Jacobson underwent a lumbar decompression and laminectomy at L4-5 in August 2005 and, when Dr. Keiper saw Jacobson at his six-day follow-up, Jacobson reported his pain was halved

---

¹One source reports service dates of December 1973 to December 1975 (Tr. 495), while another reports service dates from 1970 to 1975 (Tr. 580).

²"A radiograph of an intervertebral disk made after injection of a radiopaque substance." www.merriam-webster.com/medlineplus/diskogram (last visited Jan. 7, 2015).

and he was making progress in physical therapy. In January and again in October 2006, Jacobson told Dr. Keiper he had no complaints, "he was significantly better than prior to his surgery and is happy with his result." Tr. 267. His back pain was at a low level and he had no leg pain. Dr. Keiper told Jacobson to return to normal activities and that weight loss would benefit him.

Dr. Stephen Ames, Jacobson's family physician, prescribed Percocet for use as needed for Jacobson's back pain in August 2009.

Jacobson was diagnosed with diabetes mellitus in 1997 or so. He has not been consistent about exercise, diet, and medication use. Jacobson had xerosis[3] of the feet with fissure in December 2007, but it was no longer a problem noted by Dr. Ames in his April 2008 examination of Jacobson.

Jacobson has had sleep apnea since 1998 or 1999 and has been using a CPAP since then. He has responded well.

Dr. Ames completed a functional report in May 2008 identifying the following diagnoses for Jacobson: chronic low back pain, diabetes, hypertension, mixed hyperlipidemia, insomnia and erectile dysfunction. He did not identify any diabetes-related limitations in his report. He believed Jacobson was functionally limited in several ways after September 30, 2005. He opined Jacobson could lift 20 pounds occasionally, 15 pounds frequently, could stand and walk a total of four hours, and sit a total four hours in an eight-hour day. Jacobson needed to change positions every 20 to 30 minutes at will. He believed Jacobson would need to lie down once or twice during a work shift, due to Jacobson's back surgery and intermittent use of Percocet. Jacobson's

---

[3]"Abnormal dryness of a body part or tissue." www.merriam-webster.com/medlineplus/xerosis (last visited Jan. 7, 2015).

condition affected his ability to reach, push and pull.  Dr. Ames thought Jacobson's pain would affect his ability to remain at work for a full day and complete tasks, and that Jacobson would be absent more than three days a month.

## DISCUSSION

Jacobson challenges the ALJ's opinion on three grounds:  (1) the ALJ's credibility analysis; (2) her treatment of Dr. Ames' opinions; and (3) her assessment of the lay witness testimony.

I.      Jacobson's Credibility

The ALJ found Jacobson's testimony regarding limitations prior to April 2011 not entirely credible for the following reasons:  daily activities, inconsistent statements, failure to follow medical advice, and lack of support in the medical record for the alleged intensity of his pain.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General

findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Jacobson's daily activities, at the time relevant to the ALJ's decision, were inconsistent with Jacobson's testimony about his constant pain, inability to get around, and inability to lift items. For example, he reported acting as the primary parent for his step-son and several foster children since his wife worked full-time. He testified that he got the four kids up for school, assisted them with breakfast, helped them finish homework, went grocery shopping (he could lift a gallon of milk), began meal preparation (for as long as 25 minutes), and engaged in light housework. He informed the VA that he was working 50 hours per week taking care of the children, while continuing his part-time tax consulting business. He also told the VA he could walk one to two miles. Jacobson had traveled to Hawaii, and would regularly go to Alaska for several months out of the year. As of August 2004, he was boating and fishing. He went camping with the Boy Scouts for a week in August 2006.[4]

Jacobson's critique of the ALJ's decision is vague; he argues only that there is no evidence his activities contradict his testimony. To the contrary, it was reasonable for the ALJ to consider the level of activity Jacobson reported, particularly to the VA, to be inconsistent with his testimony about his pain and low levels of activity. Tommasetti v. Astrue, 533 F.3d 1035,

---

[4]Although Jacobson implies he was only transporting Boy Scouts, in evaluating Jacobson's complaints of abdominal pain, his doctor reported Jacobson had been "camping for the past week with Boy Scouts. Brought his own water." Tr. 281.

Page 9 - OPINION AND ORDER

1039 (9th Cir. 2008) (ALJ entitled to draw inferences "logically flowing from the evidence") (citation omitted).[5]

The ALJ also noted inconsistent statements.[6] At the hearing in 2010, Jacobson testified the family no longer housed foster kids because of the stress. Tr. 845. His wife testified that the State removed the children because of Jacobson's use of drugs. Tr. 888. The ALJ pointed out that although Jacobson remembered having a neck fracture while in the military, the VA records reflect only a neck strain. Indeed, the VA denied service connected benefits for neck and back impairments. Similarly, the VA denied service connected benefits for headaches because, in part, Jacobson never reported having any problems with headaches to any care provider until December 2009. Finally, the ALJ cited a medical record from April 2011 in which Jacobson reported that his back had been "fairly asymptomatic" until "about 5 weeks ago." Tr. 913. Tommasetti, 533 F.3d at 1039 (prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, are proper credibility factors).

Jacobson argues the ALJ should have attributed the fact that Jacobson never complained of headaches to his military pride, relying on a report prepared by psychologist William McConochie, Ph.D. Dr. McConochie reported Jacobson felt too proud to admit to *depression*,

---

[5]Notably, the ALJ did not conclude that Jacobson's levels of activity were consistent with activities transferable to a work setting, but rather indicated Jacobson overstated his symptoms and limitations.

[6]The ALJ wrote Jacobson testified to having four children in the household, while his wife reported six children. However, the two reports were given more than two years apart, and Jacobson explained in the 2008 hearing that two children had grown up and moved out. This is not a clear and convincing reason which could affect Jacobson's credibility. The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

Page 10 - OPINION AND ORDER

labeling his feeling as frustration instead. The medical record nowhere supports a conclusion that Jacobson had trouble admitting to physical problems. Further, while the VA examiner described Jacobson's headaches as occurring two to three times a week, and concluded they met the criteria for true migraines, the VA Rating Decision specifically commented that the VA examiner relied solely on Jacobson's reports and that nothing in the underlying medical records either during or since Jacobson's service supported a conclusion that Jacobson suffered from migraines or headaches.

The ALJ additionally noted Jacobson's failure to comply with repeated direction and encouragement to lose weight, increase exercise, take his medication regularly, and watch his diet to better control his diabetes. Failure to follow medical advice is a clear and convincing reason to find a claimant less than credible. Tommasetti, 533 F.3d at 1039 (unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment). Jacobson contends the ALJ's reliance on this factor is contrary to the Ninth Circuit's decision in Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007), in which the court chastised the ALJ for concluding a claimant's inability to lose weight reflected poorly on his credibility. The difference here, of course, is that the ALJ focused on Jacobson's failure to follow advice for diabetes treatment, not obesity treatment. The ALJ did not err.

In sum, the ALJ's credibility findings were clear and convincing and supported by substantial evidence in the record.

II.    ALJ's Treatment of Medical Evidence

Jacobson argues the ALJ failed to discuss Dr. McConochie's opinion about plaintiff's limitations in that he can "handle simple, routine activities of daily living but depends in part on

Page 11 - OPINION AND ORDER

the Veterans Administration for medical care and on other adults for assistance with chores requiring lifting." Tr. 606. As an initial matter, Dr. McConochie does not *limit* Jacobson to simple, routine activities of daily living; he indicates Jacobson can *handle* such activities. Further, and more importantly, Dr. McConochie found Jacobson demonstrated no impairment with respect to any *work*-related limitations. Tr. 607. As a result, there were no limitations to translate into the RFC.

Jacobson also argues the ALJ treated Dr. Ames' opinions improperly. The ALJ gave "some weight" to Dr. Ames' opinions, but not to his opinion that Jacobson would miss more than three days of work per month. The ALJ concluded Dr. Ames' opinion was inconsistent with the doctor's medical records and Jacobson's activities, and was overly reliant on Jacobson's subjective complaints about low stamina and persistence. Additionally, Dr. Ames gave no reason for concluding Jacobson would miss three days of work per month; such a conclusion was not supported by Dr. Ames' chart notes and was inconsistent with the treating neurologist's notes.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.

The parties agree the ALJ was required to give specific and legitimate reasons for finding Dr. Ames' opinion not wholly persuasive. The ALJ properly justified her conclusion. As an initial matter, a physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041. Further, an ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195; see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (it is permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions).

Here, Dr. Ames gave no support for his conclusion that Jacobson would miss three days of work a month, and his other conclusions were based in part on Jacobson's self-reports. Additionally, as the ALJ noted, Jacobson's reported vacations, camping with the Boy Scouts, spending 50 hours a week engaged in foster child care, and self-employment preparing taxes suggested Jacobson had more stamina and less pain than he may have reported to Dr. Ames. Additionally, Dr. Ames' chart notes do not support the limitations he gives. Prior to Dr. Ames' 2008 functional report, Jacobson's treatment with Dr. Ames' clinic was limited mostly to diabetes care. Jacobson reported back pain in February 2005, which resulted in Jacobson's referral to Dr. Keiper for assessment and eventual surgery later that year. Jacobson mentioned his upcoming surgery at an appointment in August 2005. He did not raise his back problems again until April 2006 when he asked for disability paperwork to be filled out. Dr. Ames' clinic

Page 13 - OPINION AND ORDER

declined given that Dr. Keiper had provided all of Jacobson's back care. Dr. Keiper similarly declined to perform a functional assessment. Jacobson was seen several times in Dr. Ames' clinic in 2007 and never complained of back pain. Dr. Ames examined Jacobson on April 25, 2008 and reported Jacobson's "general health" was good, although he needed to control his diabetes and get more exercise. Tr. 331. Although Dr. Ames prescribed Percocet as needed for Jacobson's back pain in August 2009, Jacobson did not complain of any back pain at his December 2009 follow-up.

Similarly, Jacobson's neurologist reported that six days following Jacobson's lumbar fusion at L4-5, Jacobson's pain was halved and he was making progress in physical therapy. Tr. 219 (10/4/2005). Jacobson told his neurologist repeatedly in 2006 that he was happy, and he experienced only mild back pain and no leg pain.

The ALJ's conclusion that Dr. Ames' assessment was entitled to only partial weight was supported by specific and legitimate reasons.

III.   Lay Witness Testimony

The ALJ addressed a number of third-party statements. Jacobson challenges the ALJ's treatment of his wife's testimony, as well as the testimony given by Doug Stankavick. He also contends the ALJ failed to properly address the witness statements of Todd Lutz and Joaquin Pena.[7]

---

[7]Jacobson appears to suggest the ALJ should have treated the DDS observations about his need to lie down as a lay witness statement. Tr. 86. Agency observations are not competent lay testimony. Geer v. Colvin, No. 6:12-cv-01796-KI, 2013 WL 5536870, at *10 (D. Or. Oct. 7, 2013) (citing cases requiring sufficient contact to qualify as competent lay witness). The staff person had one interaction with Jacobson over the phone. The ALJ did not err.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ accepted Jan Jacobson's original statement and concluded it was consistent with the RFC. Jacobson contends the ALJ failed to discuss some of the limitations described by his wife, such as his inability to perform physical work due to pain and his need to rest for several hours after walking for 15 to 30 minutes. Jacobson's wife, however, identified no more restrictive limitations than did the ALJ. The ALJ limited Jacobson to performing sedentary work and allowed him to change positions from sitting to standing every 30 minutes while limiting his total walking and standing to two hours in an eight-hour workday.

Jacobson also contends the ALJ improperly addressed his wife's later testimony, at the December 2010 hearing.[8] Jacobson's wife described similar limitations to those she gave in 2005, and the ALJ found her testimony to be consistent with the RFC. Specifically, she described Jacobson as a slow walker (due to the cracks in his heels), she thought he could walk a block or two, and she thought he could stand for 15 to 30 minutes before taking a break for an hour. If Jacobson's heels are in pain, he would not go on a walk with her. He was able to wash a half load of dishes, saving the pots and pans until later or for someone else to do them. The RFC

---

[8]The ALJ incorrectly reported the testimony as being from a "December 2009 hearing." Tr. 914.

Page 15 - OPINION AND ORDER

limited Jacobson to sedentary work, allowing him to change positions from sitting to standing every 30 minutes and requiring no more than two hours standing in an eight-hour day. The ALJ did not err.

Stankavich testified that, as his neighbor, he helped Jacobson with house projects. He thought a couple of blocks would be a long way for Jacobson to walk. When they returned from the hardware store, Jacobson usually went inside his house to lie down. The ALJ found the statements credible and consistent with the RFC. Again, the ALJ did not err because she limited Jacobson to performing sedentary work, limited his total walking and standing to two hours in an eight-hour workday, and included changing positions every 30 minutes. There is no evidence in the record that Jacobson would need to lie down given these conditions.

Jacobson also disputes that the ALJ properly addressed the witness statements of Todd Lutz and Joaquin Pena. He asserts the ALJ failed to account for his friends' observations about his physical limitations with walking and standing, and his need to nap and perform activities slowly. Tr. 485; 489-90. The ALJ reported Lutz's and Pina's observations that Jacobson had difficulty standing and walking due to pain and stiffness, but rejected them given their statements that Jacobson could drive the Boy Scouts to activities. Of course, Jacobson's ability to drive does not necessarily undermine his friends' statements that he has trouble walking and standing. Nevertheless, the ALJ earlier noted Jacobson camped for a week with the Boy Scouts, which both contradicts Lutz's report that Jacobson could not participate in Scout activities and contradicts both witnesses about Jacobson's pain and stiffness. The ALJ also reported his trips to Alaska and other demanding daily activities. While the ALJ explained her decision "with less than ideal clarity," her "path may reasonably be discerned." Treichler v. Comm'r of Soc. Sec.

Admin., __ F.3d ___, 2014 WL 7332774 (9th Cir. 2014) (quotation omitted).  Additionally, since neither witness identified any limitations greater than Jacobson's wife did, and since the ALJ properly addressed her testimony, any error is harmless.  See Molina, 674 F.3d at 1114.  As a result, any error in the ALJ's treatment of Lutz's and Pina's testimony was harmless.

In sum, the ALJ adequately addressed the lay witness testimony.  To the extent she erred, any error was harmless.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this     12th     day of January, 2015.

    /s/ Garr M. King
Garr M. King
United States District Judge